# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Robert Joseph Olson,

        Defendant.

**Criminal File No.: 11-cr-62 JRT/SER**

**AMENDED REPORT AND RECOMMENDATION**

       Kimberly A. Svendsen, Esq., United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Plaintiff.

       Douglas Olson, Esq., Office of the Federal Defender, 107 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Defendant.

STEVEN E. RAU, United States Magistrate Judge

       The above captioned case comes before the undersigned United States Magistrate Judge on Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 21] and Motion to Suppress Statements [Doc. No. 22].[1]  This matter has been referred to the undersigned for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and District of Minnesota Local Rule 72.1.

## I.     BACKGROUND

       The Government filed an Indictment against Defendant Robert Joseph Olson ("Olson") on February 15, 2011 [Doc. No. 1].  This Court held a pre-trial motions hearing on April 26, 2011.  Special Agent Jared Drengson of the Department of Homeland Security – Investigations ("SA Drengson") testified on behalf of the Government.  The Court received two exhibits into

---

[1] The non-dispositive pretrial motions [13, 15, 17, 18, 19, and 20] are addressed in a separate Order.

evidence: a U.S. Immigration and Customs Enforcement Consent to Search form (Gov't Ex. 1)

and a U.S. Immigration and Customs Enforcement Statement of Rights form (Gov't Ex. 2).  Both

forms were signed and dated May 26, 2009.  This matter is set for trial before United States

District Judge John R. Tunheim on July 18, 2011.

## II.    FACTS

The following facts were elicited from the testimony and exhibits introduced at the

hearing.  SA Drengson works for Homeland Security Investigations in the child exploitation

group, which investigates crimes against the government such as child pornography possession,

distribution, receipt and reproduction.  Drengson has been a Special Agent for approximately 4

years.

Prior to May 2009, the agency's Office in Houston, Texas conducted forensic

examinations on an individual's computer that was seized on suspicion of containing child

pornography.  The Houston office discovered that an individual with an email address of

Karenbi4169@aol.com exchanged emails containing child pornography with various individuals.

Based on the forensic tapes he received from the Houston Office, SA Drengson sent an

administrative subpoena to AOL to obtain the user name and mailing address of an email address

that had been involved in the exchange of child pornography.  The information SA Drengson

gained from the subpoena led to the investigation of Olson's email account.  To confirm Olson's

home address, SA Drengson sent a confirmation cover letter through the U.S. Postal Service to

Olson's mailing address.  SA Drengson's letter confirmed that Olson and his roommate, Jim

Danielson ("Danielson"), reside at the same address that was identified in the subpoena.

On May 26, 2009, SA Drengson and his partner, Special Agent Summer Jones ("SA

Jones"), conducted a "knock and talk" at Olson's home in Minneapolis, Minnesota and identified

themselves as U.S. Immigration and Customs Enforcement Agents ("ICE").[2]  A knock and talk

is an investigative technique used to talk with a suspect consensually when law enforcement does

not have sufficient evidence for a search warrant.  Olson answered the door.  The agents were

dressed casually in jeans and tee shirts.  No firearms were visible.[3]  The agents showed their

credentials and told Olson they had evidence that illegal materials may be on his computer.  SA

Drengson also wanted to confirm that Olson resided at the address identified in the

administrative subpoena.

After introducing himself, SA Drengson offered Olson an ICE "Consent to Search" form.

(Gov't Ex. 1).  In the entrance of his home, Olson took time to review the form and signed the

form without asking any questions.  Drengson and Jones signed the form as witnesses.  Olson

signed the form before any items were seized.  The form states that Olson was informed of his

"constitutional right not to have a search made of the premises" and that he authorized the search

"voluntarily and without threats, promises, pressure, or coercion of any kind."  (Gov't Ex. 1).

SA Drengson reminded Olson that the form was based solely on his voluntary cooperation and

that he could withdraw his consent at any time.

On his own accord, Olson led the agents to his bedroom, where his computer was located

against the back wall.  SA Drengson then inserted a CD containing a forensically sound software

program, SPADA System Preview ("SPADA"), into Olson's computer.  The program allows the

user to bring up recently downloaded or viewed images.  SPADA bought up numerous videos of

what SA Drengson described as "child pornography" based on his training and experience.  One

such video was entitled "fourteen-year-old fuck" and portrayed a pre-pubescent female engaging

in sexual acts with an adult male.

---

[2] At the time of the knock and talk in May 2009, SA Drengson's division of ICE was not yet part of the Department of Homeland Security.
[3] This sentence is amended in light of the Government's request for clarification [Doc. No. 41, at 2].

Olson told the agents that he saved information from his computer on his thumb drives. SA Drengson informed Olson that the videos appeared to be contraband and that that his computer and two unattached thumb drives would be seized.  Olson was present during the search and did not ask questions, request that the agents stop the search, or ask for an attorney. The agents did not have a warrant for either Olson's computer or his thumb drives.  Olson did not object to the seizure of these items.

Then, SAs Drengson and Jones conducted an interview of Olson in his bedroom.  Before the interview, SA Drengson gave Olson an ICE "Statement of Rights" form acknowledging his rights under *Miranda* to remain silent, consult an attorney, and stop the questioning at any time. Olson read, signed, and dated the form.  (Gov't Ex. 2).  Olson did not ask any questions.  SAs Drengson and Jones signed and witnessed the form.  The Olson was not under arrest at the time of the interview.

The interview lasted for approximately 20 minutes.  During the interview, Olson sat on the bed.  SA Drengson was seated the other end of the bed and SA Jones was seated in a chair on the other side of the room.  The interview began by SA Drengson asking Olson biographical information.  At least twice during the interview, SA Drengson reminded Olson that he was not obligated to speak with them.  Olson did not at any point refuse to answer questions or ask for an attorney.

Olson appeared to understand the questions that were being asked of him and responded appropriately.  Throughout the interview, the agents remained approximately 5-6 feet away from Olson.  The tone was casual and focused on information gathering.  No physical or verbal coercion occurred.  No promises were made during the interview.  Olson did not appear to be intoxicated or otherwise incapacitated.  Olson was polite and cooperative.  Olson's roommate,

Danielson, was elsewhere in the residence during the interview.  At its conclusion, the agents

thanked Olson and provided him with their business cards and contact information.

The agents were at Olson's home for a total of approximately one hour and fifteen

minutes.  Olson was not arrested at the conclusion of the interview and remained at his home

after the interview.  The agents left with the computer and thumb drives, which were

subsequently forensically searched by law enforcement without a warrant.[4]  The images SA

Drengson saw on Olson's computer on May 26, 2009, form the basis for the charges against

Olson.

## III.   DISCUSSION

Defendant Olson moves to suppress the evidence seized from his home arguing that the

seizure of his computer and thumb drives exceeded the scope of his consent.  Olson also moves

to suppress the statements he made to the agents at his home prior to his arrest.  The Court

disagrees and recommends that the motions be denied.

### A. The Search of Olson's Computer Did Not Exceed Olson's Consent and Did Not Violate the Fourth Amendment

Defendant Olson argues that he consented to the search of his computer and thumb drives

but not the seizure of those items (Def.'s Mem. at 2).  He asserts that the discovery of one image

of child pornography "does not convert the entire computer or its contents into contraband."  *Id*.[5]

Olson further contends that the agents should have obtained a warrant before seizing these items

and removing them from his home.  *Id*.  As the Government points out, however, Olson signed a

consent form authorizing the search and seizure of his computer.  The Court will analyze Olson's

---

[4] In light of the Government's request for clarification [Doc. No. 41, at 1-2], no testimony or exhibits were entered into evidence as to whether any additional images were discovered on Olson's computer in subsequent off-site forensic searches. (Tr. 12-13, 24-25).  However, both parties stated in their briefs that no additional images were found on the two thumb drives seized from Olson's residence.  (Gov't Mem. at 6 n.1; Def.'s Mem. at 2).

[5] This argument implies that only one image was discovered on Olson's computer, which is not the case.  As the record and this report and recommendation reflect, SA Drengson saw "multiple videos" containing child pornography on May 26, 2009.  (Tr. 12); *see supra* p. 3, ¶ 4.

argument by evaluating the voluntariness of Olson's consent and then by determining the scope of the consent.

### a.   Olson Voluntarily Consented to the Search of his Computer and Thumb Drives

Olson does not appear to dispute the voluntariness of his signing of the Consent to Search Form, yet voluntariness is a threshold issue in determining the scope of consent. "The government bears the burden of proving the voluntariness of a suspect's consent to a search by a preponderance of the evidence." *United States v. Willie*, 462 F.3d 892, 896 (8th Cir. 2006); *see United States v. Gallardo*, 495 F.3d 982, 988 (8th Cir. 2007). Police officers may search an area without a warrant "if they obtain a voluntary consent from someone possessing adequate authority over the area." *United States v. Chaidez*, 906 F.2d 377, 380 (8th Cir. 1990) (citing *United States v. Matlock*, 415 U.S. 164, 171 n. 7 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)).

Whether consent to search was given voluntary or was the result of duress or coercion is a question of fact to be determined from the totality of the circumstances. *United States v. Arciniega*, 569 F.3d 394, 398 (8th Cir. 2009); *United States v. Watters*, 572 F.3d 479, 483 (8th Cir. 2009). The Eighth Circuit has identified a number of factors that a court should consider in determining if consent was voluntary in the totality of the circumstances: (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of his *Miranda* rights; (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals; (5) the length of the detention; (6) whether the police used threats, physical intimidation, or punishment to extract consent; (7) whether the police made promises or misrepresentations; (8) whether the individual was in custody or under arrest when consent was

given; (9) whether the consent was given in public or in a secluded location; and (10) whether the individual stood by silently or objected to the search. *Arciniega*, 569 F.3d at 398; *United States v. Bradley,* 234 F.3d 363, 366 (8th Cir. 2000); *Chaidez,* 906 F.2d at 381. No single factor is dispositive or controlling. *Bradley,* 234 F.3d at 366.

In this case, Olson signed the consent to search form after reviewing the form and without asking any questions. Notwithstanding Drengson's repeated affirmation of his right to revoke his consent, Olson did not revoke his consent at any point. SA Drengson reminded Olson several times that he had the right to revoke his consent at any time. Olson was not subject to any physical or verbal coercion by SAs Drengson and Jones, who were plain-clothed and unarmed. Olson did not show signs of intoxication or incapacity. Olson's consent was therefore voluntary based on the totality of the circumstances. *See Arciniega*, 569 F.3d at 398; *Bradley,* 234 F.3d at 366; *Chaidez,* 906 F.2d at 381.

**b.   The Seizure and Subsequent Forensic Search of Olson's Computer and Thumb Drives Was Within the Scope of Olson's Consent**

Olson's motion rests almost exclusively on the contention that the seizure and subsequent forensic search of his computer and thumb drives exceeded the scope of his explicit consent. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness." *Illinois v. Rodriguez*, 497 U.S. 177, 183-89 (1990); *see Florida v. Jimeno*, 500 U.S. 248, 251 (1991). If a suspect's consent reasonably "extend[s] to a particular container" the Fourth Amendment does not require further explicit authorization. *Jimeno*, 500 U.S. at 252; *United States v. Ross*, 456 U.S. 798, 824 (1982).

In this case, the object of Olson's consent was his computer and thumb drives. Olson argues that his consent was limited to the only the initial search of his computer using the SPADA program and that he did not consent to subsequent searches or the removal of any items

from his home.  Olson, however, explicitly consented to the search in writing.  The Consent to

Search Form states:

> "I hereby authorize officer(s) SA Drengson and SA Jones to conduct a **complete search** of **my computer(s) and computer related storage media** described as [defendant's address] and to **take therefrom** any letters, papers, materials, or **other items/property** which they may desire."

(Gov't Ex. 1) (emphasis added).

In applying the objective standard, we must ask whether a reasonable person would

understand Olson's consent to extend to the seizure and forensic search of his computer and

thumb drives.  The Consent to Search Form's unequivocal language reasonably demonstrates

that Olson's consent extended to the seizure and forensic examination of his computer and thumb

drive.[6]  SA Drengson's seizure and search did not violate Olson's Fourth Amendment rights.

### c.  The Special Agent Drengson's Seizure of Olson's Computer and Thumb Drives Was Lawful Under the Plain View Doctrine

The plain view exception to the warrant requirement allows officers to seize an object if

"the incriminating character of the object is immediately apparent, and the officers have a

rightful right of access to the object."  *United States v. Muhammad*, 604 F.3d 1022, 1027 (8th

Cir. 2010) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)).  In the context of the

Fourth Amendment, "immediately apparent" means that the officer performing the search has

"probable cause to believe an item is incriminating."  *United States v. Green*, 560 F.3d 853, 858

(8th Cir. 2009); *see United States v. Vallimont*, 378 Fed. Appx. 972, 974 (11th Cir. 2010)

(explaining that the "incriminating character" of defendant's computer was "immediately

apparent" based on statements that it contained child pornography).  When an officer discovers

child pornography, it becomes "'immediately apparent'" that its possession by the computer's

---

[6] As both parties point out, no additional child pornography was discovered on Olson's computer or thumb drives. Thus, there is no additional contraband to be suppressed because the charges against Olson are based on the images SA Drengson found during the course of the knock and talk on May 26, 2009.

owner is illegal and incriminating.  *United States v. Williams*, 592 F.3d 511, 522 (4th Cir. 2010)

(quoting *Horton v. California*, 496 U.S. 128, 136 (1990).

In this case, SA Drengson had lawful access the child pornography on Olson's computer

because Olson voluntarily signed the Consent to Search form.  The video entitled "fourteen-year-

old fuck" Drengson observed on Olson's computer was facially and immediately incriminating

because mere possession of child pornography is a crime.  *See Williams*, 592 F.3d at 522;

*Vallimont*, 378 Fed. Appx. at 974.  Thus, SA Drengson's seizure of Olson's computer and thumb

drives was lawful under the plain view exception.  *See Dickerson*, 508 U.S. at 372; *Horton*, 496

U.S. at 136.

**B.  Olson's Statements to Special Agents Prior to His Arrest Need Not be Suppressed**

Olson did not object to or make any arguments to suppress statements made to SAs

Drengson and Jones either in his post-hearing brief or at the motion hearing.  Nonetheless, the

Court must rule on Olson's Motion to Suppress Statements.  Generally, a law enforcement

officer must advise a person of his *Miranda* rights before interrogating a suspect in a custodial

setting.  *Miranda v. Arizona,* 384 U.S. 436, 444 (1966); *Illinois v. Perkins*, 496 U.S. 292, 297

(1992).  Miranda defines custodial interrogation as "questioning initiated by law enforcement

officers after a person has been taken into custody or otherwise deprived of his freedom of action

in any significant way."  *United States v. Hogan*, 539 F.3d 916, 921 (8th Cir. 2008) (citing

*Miranda,* 384 U.S. at 444).  An interrogation includes either express questioning or actions on

the part of the police that the police should know are reasonably likely to elicit an incriminating

response.  *Id.*; *United States v. Howard*, 532 F.3d 755, 762 (8th Cir. 2008); *United States v.

Torres-Lona*, 491 F.3d 750, 757 (8th Cir. 2007).  The "determination of custody depends on the

objective circumstances of the interrogation, not on the subjective views harbored by either the

interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994). The Eighth Circuit has identified several non-exhaustive "indicia of custody" to aid courts in determining whether a *Miranda* warning was required:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990).

Applying the *Griffin* factors to these facts establishes that Olson's interview was not a custodial interrogation. 922 F.2d at 1349. SA Drengson informed Olson that he did not have to speak to the officers and that he could end the interview at any time. Olson voluntarily acquiesced to being interviewed by signing the Statement of Rights form. (Gov't Ex. 2). There is no evidence that the agents used strong-arm tactics or deception in their questioning, nor was the atmosphere police dominated. Finally, Olson was not arrested at the conclusion of the interview.

Olson's statements were voluntary and did not require any *Miranda* warning. Significantly, Olson does not specifically object to any statements he made to Special Agents Drengson and Jones, nor does he allege any coercion in signing the Statement of Rights form. Accordingly, none of Olson's statements should be suppressed.

## IV.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Defendant Olson's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 21] be **DENIED**; and

2.      Defendant Olson's Motion to Suppress Statements, Admissions, and Answers [Doc. No. 22] be **DENIED**.

Dated: June 8, 2011

s/ Steven E. Rau_____
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **June 22, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.